# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

**UNITED STATES OF AMERICA,**
Plaintiff-Appellee,

v.

**ROBERT H. RIVERNIDER,**
Defendant-Appellant.

Case No. 25-14369-J

## REPLY TO UNITED STATES' RESPONSE IN OPPOSITION TO APPELLANT'S EMERGENCY MOTION AND NOTICE REGARDING SUBSEQUENTLY MAILED RENEWED EMERGENCY MOTION

Appellant Robert H. Rivernider, proceeding pro se, respectfully submits this Reply to the United States' Response in Opposition to Appellant's Emergency Motion, App. Doc. 37.

## I. PRELIMINARY STATEMENT

This Reply is directed to the Government's Response to Appellant's earlier Emergency Motion. Before learning of the Government's Response, Appellant had already prepared and mailed a Renewed Emergency Motion based upon newly discovered information that became available only after the original motion was filed.

Appellant has separately filed a Notice of Delivery advising the Court that the subsequently mailed Renewed Emergency Motion was delivered to the Clerk's Office on June 8, 2026, but had not appeared on the docket when that notice was prepared.

1

Because Appellant is incarcerated and proceeding pro se, he does not have electronic access to the Court's docket and must rely upon institutional mail or family members to determine whether filings have occurred. Appellant did not know the Government had filed its Response until a family member checked the docket.

Appellant also did not receive notice that the Gladson letter had been approved for disclosure, did not receive the Government's request for an extension of time, and did not receive timely notice of related court activity. This is precisely why Appellant seeks release and record relief: he cannot meaningfully litigate this appeal from custody when he does not timely receive court orders, legal mail, transcripts, or docket activity.

After receiving the Gladson letter and two transcript volumes that Appellant contends raise serious issues requiring review of the original audio recordings, Appellant prepared and mailed a Renewed Emergency Motion raising those newly discovered issues before learning that the Government had already responded to the earlier motion.

Accordingly, this Reply should be construed as responding to the Government's opposition to the earlier emergency motion and should not be interpreted as abandoning or limiting the additional grounds and exhibits contained in Appellant's subsequently mailed Renewed Emergency Motion.

## II. THE GOVERNMENT DOES NOT ADDRESS THE CORE MERITS

The Government's response does not address the merits of Appellant's jurisdictional claims, the legality of the transfer proceedings, the missing docket entries, the January 14, 2025 warrant

2

proceedings, the Gladson letter, the disputed testimony of Probation Officer Padilla, the accuracy of the transcripts, or Appellant's request for original audio recordings.

Instead, the Government relies primarily on a procedural argument under 18 U.S.C. § 3143(b), contending that the district court did not make findings regarding flight risk and danger.

That argument should not defeat emergency relief. Appellant has repeatedly sought release, access to legal materials, transcripts, record materials, and meaningful appellate review. The district court did not make full § 3143(b) findings, but that omission should not prevent this Court from granting relief or, alternatively, ordering an immediate limited remand for expedited findings.

### III. THE TRANSFER TIMELINE RAISES A SUBSTANTIAL JURISDICTIONAL QUESTION

The Government's suggestion that the transfer occurred in March 2024 is materially incomplete.

The PROB 22 form shows that Judge Chatigny signed Part 1 on March 28, 2024, but Part 1 expressly provided that jurisdiction would transfer only "upon" the Middle District of Florida's order accepting jurisdiction. The receiving court's case was not opened until November 22, 2024, as docket entry 1 in Case No. 5:24-cr-00138-TPB-PRL.

Further, the transfer acceptance form appearing in the District of Connecticut case does not show a March 2024 acceptance by the Middle District of Florida. Rather, the Florida acceptance appears to have been signed by Judge Lammens on or about December 9, 2024.

Appellant is aware of no District of Connecticut docket entry in March 2024 reflecting a completed transfer to the Middle District of Florida. The apparent March 28, 2024 signature was

3

Part 1 only and was expressly conditional upon acceptance by the receiving court. The operative acceptance did not occur in March 2024.

This timing is critical. The alleged violations occurred between May and November 2024. Thus, when the receiving court accepted jurisdiction, the alleged violations had already occurred or were already known to probation. Appellant contends that the District of Connecticut, Appellant, and Connecticut counsel Robert Frost were not informed of those alleged violations before acceptance of transfer.

The transfer issue is governed by 18 U.S.C. § 3605, which requires transfer "with the concurrence of such court." Because federal courts must assure themselves of jurisdiction before exercising power, jurisdiction cannot be assumed, waived, or created by docket terminology. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998); Ex parte McCardle, 74 U.S. 506 (1868).

Had counsel been notified before transfer, he could have objected and argued that supervised release had already expired based upon First Step Act credits under then-existing District of Connecticut authority, including Rivera-Perez v. Stover, 757 F. Supp. 3d 204, 212–13 (D. Conn. 2024).

The failure to provide notice caused direct jurisdictional prejudice.

## IV. THE GOVERNMENT RELIES ON DOCKET MATERIALS APPELLANT DOES NOT HAVE

The Government cites docket entry 6. That docket entry falls within the missing range of docket entries 2 through 7, which Appellant has repeatedly requested but has not received.

4

The Government's reliance on docket entry 6 confirms that the Government possesses and relies upon materials Appellant does not have. That is precisely why Appellant seeks production of the complete record, including docket entries 2 through 7.

## V. DOC. 128 DID NOT PROVIDE THE COMPLETE RECORD

The Government suggests Appellant already received relief regarding record materials. That is incomplete.

Doc. 128 did not provide Appellant with docket entries 2 through 7, transcripts, original audio recordings, the complete appellate record, sealed or restricted materials, or other materials necessary to litigate the jurisdictional and due process issues.

Doc. 128 merely directed the Clerk, "as a courtesy," to send a docket sheet and copies of Docs. 107, 109, 113, 114, and 115. It further stated that any additional materials would have to be requested at fifty cents per page.

That order did not cure the record-access problem.

## VI. APPELLANT IS NOT A FLIGHT RISK OR DANGER

The existing record shows Appellant is neither a flight risk nor a danger to the community.

The District of Connecticut previously determined Appellant was not a flight risk or danger when it allowed him to remain on pretrial release for approximately thirty-four months from 2011 to 2014 before self-surrendering. Appellant complied with that release and self-surrendered. That history strongly supports release now, where the alleged violations are non-violent and Appellant has already served more than the advisory guideline range.

5

Appellant also remained in the community on supervised release for approximately four and one-half years. The violations at issue are non-violent and involve reporting, financial disclosure, restitution, and supervision issues. They do not involve violence, weapons, narcotics, threats, or danger to any person.

Appellant learned of the warrant on or about January 19, 2025. He did not flee. Instead, he attempted to determine who issued the warrant and why, because the docket reflected that the case was closed and terminated. Appellant even filed a motion in the Middle District of Florida asking whether that court had issued a warrant.

The Government identifies no evidence that Appellant poses a physical danger to the public.

## VII. THE APPEAL IS NOT FOR DELAY

This appeal is not for delay. Appellant seeks expedited review, immediate access to the complete record, production of original audio recordings, complete unredacted and unaltered transcripts, and resolution of substantial jurisdictional issues.

A party seeking delay would not request immediate transcripts, original recordings, and expedited appellate review.

## VIII. THE APPEAL PRESENTS SUBSTANTIAL QUESTIONS

This appeal presents substantial questions of law and fact, including:

1. whether the Middle District of Florida validly obtained jurisdiction;

2. whether transfer occurred without notice to Appellant or Connecticut counsel;

3.  whether supervised release had already expired or should have been deemed expired based on First Step Act credits;

4.  whether docket entries 2 through 7 contain material transfer or warrant information;

5.  whether a January 14, 2025 ex parte proceeding or communication occurred;

6.  whether Probation Officer Padilla gave materially inconsistent or false testimony;

7.  whether the Gladson letter improperly influenced sentencing;

8.  whether the district court relied on inaccurate information at sentencing;

9.  whether original audio recordings are necessary to determine what occurred; and

10. whether the Government and Bureau of Prisons are improperly treating Appellant's revocation term as a "new sentence" for credit-denial purposes while relying on the original conviction and sentence to justify imprisonment.

Padilla was the central witness. Appellant contends that accurate transcripts and original audio recordings will show material inconsistencies regarding the alleged letter, notice, or documents that formed part of the violation allegations. If that testimony is shown to be materially false or unreliable, the revocation judgment cannot stand.

This appeal also presents a substantial procedural question under Federal Rule of Criminal Procedure 32.1. Appellant was arrested in June 2025, but the final revocation hearing did not occur until December 12, 2025. Appellant contends that the delay prejudiced him because he remained detained beyond the three-to-nine-month advisory guideline range while lacking access to transcripts, docket materials, original audio recordings, and legal materials necessary to defend against the alleged violations and preserve appellate issues.

**IX. THE GLADSON LETTER RAISES A SERIOUS SENTENCING ISSUE**

7

The Government does not address the Gladson letter.

That letter urged the district court to impose a lengthy prison sentence and expressly referenced Appellant's "beliefs" and "ideology" as reasons leniency should be denied. It also characterized Appellant's prior sentence reduction to time served as having been "graced with an early release."

Those statements raise serious concerns that the statutory maximum revocation sentence was influenced by improper considerations.

The Gladson letter also stated that Appellant "unlawfully cast a ballot belonging to his deceased father." Appellant disputes that characterization. Appellant contends that state-case materials show no vote was counted, that the ballot was not shown to the jury, and that the underlying facts were materially disputed.

The Government's opposition does not rebut any of this.

## X. APPELLANT HAS ALREADY SERVED MORE THAN THE GUIDELINE RANGE

Appellant has served more than eleven months in custody since June 24, 2025.

The advisory guideline range discussed during the revocation proceedings was three to nine months. If Appellant prevails on any substantial issue resulting in resentencing within or near the advisory range, the likely result would be time served or immediate release.

If Appellant's aggregation and sentence-computation arguments are correct, Appellant has already completed the custodial portion of his sentence or is imminently eligible for release,

8

making continued incarceration during the pendency of this appeal an irreparable injury that cannot later be remedied.

Continued incarceration risks rendering the appeal practically meaningless.

## XI. THE RECORD REMAINS INCOMPLETE AND APPELLANT CANNOT MEANINGFULLY LITIGATE FROM CUSTODY

The Government acknowledges that the final revocation transcript remains unavailable and is not due until June 22, 2026.

Even when transcripts are completed, Appellant may not receive them promptly. Eleventh Circuit notices mailed to Appellant at FCI Beckley were delivered to the institution on May 28, 2026, according to tracking, but Appellant did not timely receive them. Appellant has also experienced delays receiving legal mail and filings in his pending § 2241 case.

Appellant's phone calls and emails are limited to ten minutes at a time, with only one phone or email session permitted during each half-hour interval. Appellant also has limited access to legal materials and transcripts, including materials that can only be reviewed through staff.

These circumstances materially impair Appellant's ability to prosecute this appeal.

## XII. THE GOVERNMENT'S AND BOP'S INCONSISTENT TREATMENT OF THE REVOCATION SENTENCE PRESENTS A SUBSTANTIAL QUESTION

The Government and the Bureau of Prisons continue to characterize Appellant's December 12, 2025 revocation imprisonment as though it were an entirely new sentence for administrative computation purposes while simultaneously relying upon the original 2013 conviction and sentence to justify that imprisonment.

That position is inconsistent with governing law.

In Johnson v. United States, 529 U.S. 694 (2000), the Supreme Court explained that post-revocation imprisonment is attributable to the original conviction. Likewise, Mont v. United States, 139 S. Ct. 1826 (2019), recognized that supervised release and revocation imprisonment remain components of the original sentence imposed by the sentencing court.

Similarly, the Eleventh Circuit's decision in United States v. Barrus, No. 23-10154 (11th Cir. 2024), recognizes that revocation imprisonment constitutes a modification or continuation of the original sentence rather than punishment for a new criminal offense.

The Government's own filings in related proceedings reinforce this conclusion by relying extensively upon original 2013 sentencing materials, presentence reports, plea documents, and original sentencing records. Those materials would be irrelevant if the revocation imprisonment truly constituted an independent new sentence.

Yet the Bureau of Prisons simultaneously refuses to aggregate the original imprisonment and revocation imprisonment for computation purposes and refuses to apply First Step Act credits on the theory that the revocation term constitutes a new sentence.

The BOP's position is also constitutionally significant. If the December 12, 2025 imprisonment were truly a new criminal sentence rather than a revocation-based modification of the original sentence, then new constitutional protections associated with a new criminal prosecution would have been required. Appellant was not indicted, tried, or convicted of any new federal offense. The only lawful basis for the revocation imprisonment is its relationship to the original conviction and original sentence.

10

The Government and BOP therefore cannot have it both ways. If the revocation term is imposed because of the original conviction, it must be treated consistently as a continuation or modification of the original sentence for administrative computation, aggregation, Good Conduct Time, First Step Act credits, and release-eligibility purposes.

This inconsistency presents a substantial question of law directly affecting Appellant's continued custody and further demonstrates irreparable harm from continued incarceration while this appeal remains pending.

## XIII. ALTERNATIVE REQUEST FOR LIMITED REMAND

If this Court concludes that release cannot be granted without district-court findings under § 3143(b), Appellant respectfully requests an immediate limited remand for expedited findings on:

1. whether Appellant is a flight risk;

2. whether Appellant is a danger to the community;

3. whether the appeal is for delay;

4. whether the appeal raises substantial questions;

5. whether those questions are likely to result in reversal, vacatur, resentencing, or a sentence less than the time already served plus the expected duration of the appeal; and

6. whether original audio recordings and complete unredacted and unaltered transcripts must be preserved and produced.

## XIV. CONCLUSION

The Government's opposition should be rejected. The Government does not address the central jurisdictional, transcript, audio, Gladson-letter, or due-process issues. Appellant has already

served more than the advisory guideline range, the record remains incomplete, and Appellant cannot meaningfully litigate this appeal from custody due to continuing legal-mail, transcript, and legal-material restrictions.

Appellant respectfully requests that this Court grant release pending appeal, order production and preservation of original audio recordings and complete unredacted and unaltered transcripts, or alternatively order an immediate limited remand for expedited § 3143(b) findings.

Respectfully submitted,

Dated: June 18, 2026

*Robert Rivernider*

With Permission

ELECTRONIC SIGNATURE:/s/ Robert Rivernider
Robert Rivernider, Pro Se

Robert Rivernider
Reg. No. 96006-004
FCI Beckley Satellite Prison Camp
P.O. Box 350
Beaver, WV 25813

12

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Reply to United States' Response in Opposition to Appellant's Emergency Motion and Notice Regarding Subsequently Mailed Renewed Emergency Motion was placed in the United States Mail on this 18th day of June 2026, addressed to:

Office of the United States Attorney
Middle District of Florida

Respectfully submitted,

*Robert Rivernider*

With Permission

ELECTRONIC SIGNATURE:/s/ Robert Rivernider
Robert Rivernider, Pro Se

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

JUN 29 2026

U.S. MARSHALS SERVICE
11th Circuit Court of Appeals (COA)

# Click-N-Ship®

9405 5301 0935 5394 9367 39 0111 2001 0003 0303

U.S. POSTAGE PAID

Mailed from 34785    25403806932119

**UNITED STATES POSTAL SERVICE.**

usps.com
$11.12
US POSTAGE

**P**

06/20/2026
1 lb 0 oz

Created 2026-06-19
Flat Rate Envelope
**RDC 03**

**C007**

## PRIORITY MAIL®

ROBERT RIVERNIDER
14 S BOBWHITE RD
WILDWOOD FL 34785-9011

US APPEALS CT - 11TH CIRCUIT
CLERK OF THE COURT
56 FORSYTH ST NW
ATLANTA GA 30303-2218

USPS TRACKING #

9405 5301 0935 5394 9367 39

LEGAL MAIL
CASE NO. 25-14369




To schedule free Package Pickup,
scan the QR code.

USPS.COM/PICKUP




how2recycle.info

PAPER POUCH

---

**UNITED STATES POSTAL SERVICE®** | **PRIORITY MAIL**

FSC MIX
rfsc C119016

Expected delivery date specified for domestic use.

Domestic shipments include $100 of insurance (restrictions apply).*

USPS Tracking® service included for domestic and many international destinati

Limited international insurance.**

When used internationally, a customs declaration form is required.

Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.

See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

# FLAT RATE ENVELOPE
## ONE RATE ■ ANY WEIGHT

## TRACKED ■ INSURED

EP14F October 2023
OD: 12 1/2 x 9 1/2



PS00001000014