No. 25-14369-J

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

U.S. COURT OF APPEALS
RECEIVED
CLERK
JUL 24 2026
ATLANTA, GA

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

ROBERT RIVERNIDER,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Florida
Case No. 5:24-cr-00138-TPB-PRL-1

# APPELLANT'S OPENING BRIEF

Robert Rivernider, Pro Se
Reg. No. 96006-004
FCI Beckley Satellite Camp
P.O. Box 350
Beaver, West Virginia 25813
Telephone: Not available to incarcerated pro se litigant

U.S. COURT OF APPEALS
RECEIVED
CLERK
JUL 24 2026
ATLANTA, GA

No. 25-14369-J - United States v. Rivernider

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, Appellant Robert Rivernider certifies that the following persons and entities have an interest in the outcome of this appeal:

Barber, Hon. Thomas P. - United States District Judge

Chatigny, Hon. Robert N. - United States District Judge, District of Connecticut

Frost, Robert M., Jr. - Connecticut counsel for Appellant

Gladson, William - Florida state prosecutor and author of the September 8, 2025 letter

Hamilton, John M. - Assistant United States Attorney

Lammens, Hon. Philip R. - United States Magistrate Judge

Padilla, Erik - United States Probation Officer

No. 25-14369-J - United States v. Rivernider

Rivernider, Robert - Defendant-Appellant, pro se

United States Attorney's Office for the Middle District of Florida

United States District Court for the District of Connecticut

United States District Court for the Middle District of Florida

United States of America - Plaintiff-Appellee

United States Probation Office

Victims identified in the underlying District of Connecticut criminal proceeding, as reflected in the protected district-court record

No publicly traded company or corporation has an interest in the outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument. The appeal presents a threshold statutory-authority question on an internally inconsistent and incomplete transfer-and-warrant record; a revocation judgment resting on sharply conflicting testimony about the only alleged reporting notice; and a statutory-maximum sentence imposed after the court considered undisclosed and materially inaccurate information. Oral argument would assist the Court in separating the threshold authority issues from the revocation merits and sentencing issues, and in fashioning meaningful relief before the disputed custodial term expires.

**TABLE OF CONTENTS**

Statement Regarding Oral Argument .... i

Table of Contents .... ii

Table of Authorities .... iv

Jurisdictional Statement .... vi

Record-Citation Convention .... vii

Issues Presented .... 1

Statement of the Case and Facts .... 2

Summary of the Argument .... 9

Standards of Review .... 12

Argument I - The District Court Failed to Establish and Adjudicate Its Statutory Authority, and the Transfer-and-Warrant Process Was Fundamentally Unfair .. 13

A. The record contained four incompatible jurisdictional dates and statuses . 13

B. *Bailey* does not resolve the defects presented here .... 14

C. Known pre-transfer allegations were withheld from Connecticut and counsel .... 15

D. Even if the transfer was valid, the closure and termination status required a ruling .... 16

E. Docket 10 and the secret-warrant sequence required adjudication .... 17

F. The incomplete record prevents meaningful review .... 18

Argument II - Supervised Release Should Not Have Been Revoked.................. 20

A. Revocation required disclosed and reliable evidence................................. 20

B. The Government failed to prove receipt of the November 4 instruction.... 21

C. The contradiction chart defeats the finding of knowing noncompliance.... 22

D. The Government failed to prove receipt of the October 28 email.............. 25

E. Hamilton's October 20 disclosure letter and the Brady/Giglio ruling denied a fair defense ........................................................................................... 26

F. Restitution nonpayment was not one of the three final findings................. 28

G. The credit-or-loan finding arose after the case showed termination .......... 29

H. The court did not make adequate findings resolving the disputes.............. 30

Argument III - The Thirty-Six-Month Sentence Was Unlawful .......................... 31

A. The undisclosed William Gladson letter violated due process................... 31

B. The court sentenced Appellant on materially inaccurate loss information. 32

C. The court impermissibly returned to punishment for the original offense. 33

D. The dangerousness finding and fourfold variance were unsupported ........ 34

E. The court violated *Jones* ....................................................................... 35

F. Cumulative error requires meaningful relief............................................. 36

Conclusion ................................................................................................ 37

Certificate of Compliance.............................................................................. 38

Certificate of Service ................................................................................... 39

## TABLE OF AUTHORITIES

**Cases**

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) .............. 15

**Esteras v. United States*, 145 S. Ct. 2031 (2025) .................................. 10, 33-34

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973) ........................................................ 20

*Gall v. United States*, 552 U.S. 38 (2007) ..................................................... 12, 34

*Johnson v. United States*, 529 U.S. 694 (2000) .................................................. 33

**Morrissey v. Brewer*, 408 U.S. 471 (1972) ................................................. 20, 30

*United States v. Bailey*, 259 F. App'x 227 (11th Cir. 2007) ................. 9, 12, 14-15

*United States v. Campbell*, 473 F.3d 1345 (11th Cir. 2007) ............................... 35

**United States v. Frazier*, 26 F.3d 110 (11th Cir. 1994) ......................... 12, 20, 30

*United States v. Hamilton*, 708 F.2d 1412 (9th Cir. 1983) .................................. 18

**United States v. Jones*, 899 F.2d 1097 (11th Cir. 1990) ..................... 1, 11-12, 35

*United States v. Lacey*, 648 F.2d 441 (5th Cir. 1981) ................................... 20, 30

**United States v. Reme*, 738 F.2d 1156 (11th Cir. 1984) ............................... 31-32

*United States v. Taylor*, 931 F.2d 842 (11th Cir. 1991) ...................................... 32

**United States v. Tyler*, 605 F.2d 851 (5th Cir. 1979) .................................. 15, 18

*United States v. White*, No. 12-16214 (11th Cir. Feb. 19, 2014) .......................... 12

*United States v. Williams*, No. 24-14071 (11th Cir. Oct. 8, 2025) ................ 12, 35

*United States v. Young*, No. 25-11678 (11th Cir. Apr. 29, 2026) ....................... 17

**Statutes and Rules**

18 U.S.C. § 3553(a) .......... 33

18 U.S.C. § 3583(e) .......... vi, 1, 10, 33

18 U.S.C. § 3583(i) .......... vi, 9, 12-13, 17, 19

18 U.S.C. § 3603(2) .......... 15

18 U.S.C. § 3605 .......... vi, 9, 12-14

18 U.S.C. § 3742(a) .......... vi

28 U.S.C. § 1291 .......... vi

Fed. R. Crim. P. 32.1 .......... 20, 27

U.S.S.G. § 7B1.2 .......... 15

* Authorities upon which Appellant primarily relies.

## JURISDICTIONAL STATEMENT

The district court purported to exercise authority under 18 U.S.C. §§ 3583(e), 3583(i), and 3605. It entered the revocation judgment on December 12, 2025, imposing thirty-six months of imprisonment and no further supervised release. (Doc. 115.) Appellant filed a timely notice of appeal on December 15, 2025. (Doc. 119.) This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Appellant challenges both the district court's threshold statutory authority and the procedures by which that authority was asserted. The Florida case contained no new federal indictment or offense of conviction. Its authority depended entirely on a valid transfer under § 3605, a legally existing term of supervised release, and, if that term had expired, compliance with § 3583(i). Those questions are reviewed de novo.

## RECORD-CITATION CONVENTION

District-court docket entries are cited as "Doc. __." Hearing transcripts are cited by date, transcript page, and line where available—for example, "Oct. 24 Tr. 66:3-7." The official transcript record was produced in separate parts and did not consistently identify a stable docket number on the copies furnished to Appellant. The Connecticut judgment and the September 8, 2025 William Gladson letter are identified by document name and page.

## ISSUES PRESENTED

I. Whether the Middle District of Florida failed to establish and adjudicate its statutory authority where the transfer record contained incompatible dates and a closed/terminated status; Connecticut counsel was not informed; known pre-transfer allegations were not presented to the Connecticut court; Docket 10 challenged the warrant and jurisdiction while Appellant remained openly available; and the January 14 materials and Dockets 2-7 were withheld.

II. Whether the three revocation findings—failure to report, failure to disclose financial information, and obtaining new credit or a loan without approval—were unsupported by reliable proof of notice and willfulness, where the Government did not prove receipt of either the alleged November 4 reporting letter or the alleged October 28 email, relied on Padilla's changing testimony, denied material impeachment and disclosure requests, and treated a vehicle purchased after the docket showed termination as a knowing violation.

III. Whether the statutory-maximum thirty-six-month sentence violated due process and § 3583(e) because the court used William Gladson's undisclosed "court only" letter, materially misstated the loss and victim evidence, returned to punishment for the original offense, made an unsupported dangerousness finding, varied fourfold from the advisory range, and failed to conduct the required *Jones* colloquy.

## STATEMENT OF THE CASE AND FACTS

### A. The original judgment and supervised-release term

Appellant is incarcerated at the Federal Correctional Institution Beckley Satellite Camp in Beaver, West Virginia.

The District of Connecticut sentenced Appellant in 2013 to 144 months of imprisonment, five years of supervised release, and restitution. In May 2020 the Connecticut court granted compassionate release and reduced imprisonment to time served. The transfer papers identified the supervised-release term as May 14, 2020 through May 13, 2025. (Doc. 1.)

The Connecticut judgment did not find that Appellant personally stole or received $22 million. It recognized that the calculated harm was greatly increased by the collapse of the real-estate market and addressed the limited financial benefit attributed to Appellant. (Connecticut Judgment at 2-4.) Those distinctions later disappeared from the Florida court's description of the original case.

### B. The transfer record, closure notation, and pre-transfer allegations

The transfer record contains materially different dates. The Florida docket was opened with a transfer document on November 22, 2024, and the docket itself displayed "CLOSED/PROB/SR TRAN" and "Terminated: 11/22/2024." (Doc. 1; Aug. 26 Tr. 14-15.) Other transfer materials state that Connecticut re-executed the form on December 4, 2024, Judge Barber accepted jurisdiction on December 9,

and the order was entered in Connecticut on December 11. Padilla nevertheless testified on June 25 that jurisdiction had transferred in January 2025. (June 25 Tr. 12:7-13.)

Every allegation later submitted for the January 14 warrant arose before any of those dates: restitution nonpayment from May through September 2024, an October 28 request for bank statements, and an alleged October 30 or October 31 notice directing Appellant to report on November 4. (June 25 Tr. 11-14; Aug. 26 Tr. 11-13.) Connecticut counsel Robert Frost was not informed of those allegations before transfer. Nor does the Connecticut docket show a violation report comparable to prior probation submissions, although Padilla testified that Connecticut had been notified. (June 25 Tr. 14.)

Frost later emailed Padilla under the subject "SR transferred and terminated." (Aug. 26 Tr. 14-15.) The closure/termination entry and counsel's communication were not merely technical. They bore directly on whether the Florida case remained active and on whether Appellant knowingly violated conditions after he understood the case to have ended.

### C. The January warrant remained undisclosed while Appellant openly filed in the case

A warrant issued on January 14, 2025. Yet Appellant received no letter, summons, direction to appear, or personal notification. On February 18, 2025—approximately one month after the warrant—he filed Docket 10. That filing

attached the docket page showing the case terminated on November 22, identified the reported January 14 warrant, stated that "no notification has been given," and expressly challenged the court's administrative and statutory jurisdiction. (Doc. 10 at 5-7.) Appellant filed another motion in February as well. The court thus knew where he was, accepted his filings, and had a direct means to direct him to appear.

No one told Appellant to surrender, mailed him a summons, came to the residence to execute the warrant, or responded to his direct inquiry. He first learned that the warrant would be enforced when he encountered the Wildwood Police Department in June 2025. At the June 25 proceeding, he again challenged jurisdiction. (June 25 Tr. 10:11-13.) He also emphasized that he had remained readily available and had appeared and reported for approximately fifteen years before the disputed November 4 appointment. (June 25 Tr. 12:14-25.)

**D. The alleged notice changed at every material point**

The Government's first violation depended on proving that Appellant knowingly received an instruction to report on November 4 with bank statements. But the delivery account changed repeatedly. At the June 25 proceeding, counsel referred to a "letter" left "at the house" on October 30. (June 25 Tr. 11-14.) Padilla testified that he went to the home and left a notice; he did not identify a car or windshield.

At the August 26 hearing, Padilla first said, "I left a notice at your home on October 30th, 2024." After questioning, he changed the date to October 31. He admitted Appellant was not seen, that he did not knock, and that he "just left a notice." When asked how he knew it was received, he shifted to a later email in which Appellant allegedly returned "the documents" through an iCloud account. (Aug. 26 Tr. 11-13.)

At the October 24 hearing the location changed again. Padilla said he placed a letter on Appellant's car and later on a windshield, but could not identify which vehicle. (Oct. 24 Tr. 19, 41.) He admitted that the documents allegedly placed in the envelope had already been provided to Appellant and that the reporting letter was not attached to the email. (Oct. 24 Tr. 45-46.) Claimed phone calls and text messages were not supported by records. (Oct. 24 Tr. 46-47.) Padilla admitted there was no independent means for the court to verify receipt apart from his testimony and the disputed letter. (Oct. 24 Tr. 50-51.)

**E. Disclosure disputes and the unsupported vehicle narrative**

Before the final hearing, Appellant sent Brady/Giglio requests on September 10 and September 29. The first sought exculpatory and impeachment material supporting Docket 78 and the violation allegations. The second specifically sought "Complaints, Dkts. 2-7," investigative files, records concerning those docket entries, and hearing transcripts. Those requests were not meaningfully answered.

Hamilton's October 20, 2025 disclosure letter then asserted: "Although you have not made a formal or informal discovery request, and the Court has not ordered discovery production, we are nevertheless disclosing the materials listed below." (Hamilton Letter dated Oct. 20, 2025, at 1.) That premise was false. Hamilton had already received Appellant's September 10 and September 29 Brady/Giglio requests. The letter disclosed only a selected list of documents and did not address the requested Docket 78 materials, "Complaints, Dkts. 2-7," investigative files, related hearing records, or substantive communications with Padilla.

Docket 78 stated on page five that Appellant had purchased two new vehicles simultaneously. When Appellant confronted Hamilton on October 24, Hamilton stated in substance that he did not remember saying there were two vehicles—even though the assertion appeared in the Government's own filing. (Doc. 78 at 5; Oct. 24 Tr. 70-72.) The vehicle's value also shifted: Padilla placed the amount near $61,000-$62,000 on August 26; Hamilton described an approximately $84,000-$85,000 Hyundai on October 24; Appellant later presented evidence that the vehicle's price or manufacturer's suggested retail price was approximately $46,000. (Aug. 26 Tr. 9-10; Oct. 24 Tr. 13; Dec. 12 Tr. 26-27.)

When Appellant objected to Padilla's testimony and the undisclosed letter and materials, Hamilton told the court there was no Brady material. The court

accepted that categorical representation without examining the requested prior statements, investigative materials, photograph, vehicle evidence, Dockets 2-7, or the inconsistencies already before it. (Oct. 24 Tr. 15, 35-46.)

**F. Revocation and sentence**

The allegations were Grade C violations, producing an advisory range of three to nine months. (June 25 Tr. 4; Aug. 26 Tr. 4.) The court ultimately found three violations: failure to report, failure to disclose financial information, and obtaining new credit or a loan without approval. It did not sustain restitution nonpayment as a separate final finding. The court nevertheless imposed the statutory maximum of thirty-six months with no further supervision. (Docs. 114-15.)

Before sentencing, Florida prosecutor William Gladson sent a September 8, 2025 letter marked "court only." It was provided to the court, not served on Appellant. Appellant did not obtain it until months after sentencing. Yet the court held, read, and discussed the letter at the October 24 and December 12 proceedings, including allegations about the Florida case, Appellant's beliefs, and political activity. (Gladson Letter at 1; Oct. 24 Tr. 78; Dec. 12 Tr. 18-20.)

The court also stated that Appellant had been convicted of stealing $22 million. When Appellant corrected that statement, the court responded, "That's what the document says," without identifying the document. (Oct. 24 Tr. 64-66.)

At sentencing the narrative expanded to nearly 100 people and more than $26 million. (Dec. 12 Tr. 56.) The court then described Appellant as very dangerous and stated that if it could impose more than three years, it probably would. (Dec. 12 Tr. 52.)

## SUMMARY OF THE ARGUMENT

First, the district court never resolved the threshold statutory-authority questions on a complete and coherent record. Section 3605 gives a valid transferee court broad authority, and *United States v. Bailey* permits a transferee court to address pre-transfer conduct. But *Bailey* presupposes an effective transfer and does not excuse a court from resolving inconsistent transfer dates, a closed/terminated docket status, a claim that the supervised-release term had ended, or compliance with § 3583(i). Nor does it address the fundamental unfairness of withholding known violations from the transferor court and counsel, maintaining a secret warrant while accepting Appellant's filings and direct inquiry, and then using the delayed allegations to imprison him. Docket 10 preserved these issues before arrest, yet the district court never issued a reasoned ruling.

Second, none of the three revocation findings survives the reliability and due-process requirements governing supervised-release proceedings. For failure to report, the Government offered no reliable proof that Appellant received the alleged November 4 instruction; the date, document, and delivery location repeatedly changed. For failure to disclose financial information, the Government did not prove that the alleged October 28 email was sent to or received by Appellant, and the later email evidence did not contain the reporting letter or establish delivery of the earlier request. For the credit-or-loan finding, the vehicle

was purchased on December 30, after the official docket displayed termination and after counsel communicated that supervised release had been transferred and terminated. Docket 78's unsupported two-vehicle assertion, changing vehicle prices, and Padilla's lack of personal knowledge further defeated a knowing, willful finding. Hamilton's categorical assertion that no Brady material existed did not answer the specific requests for prior statements, impeachment evidence, Dockets 2-7, the photograph, and investigative materials. The Government's October 20 disclosure letter compounded the violation by incorrectly stating that Appellant had made no formal or informal discovery request, while withholding materials expressly demanded in the September Brady/Giglio requests and later telling the court that no Brady material existed.

Third, the statutory-maximum sentence independently violated due process and § 3583(e). The court used William Gladson's undisclosed "court only" letter, denied Appellant a meaningful opportunity to rebut it, converted restitution and guideline loss into $22 million supposedly stolen, expanded the account to more than $26 million and nearly 100 victims, revisited the original Connecticut punishment and compassionate release, and found Appellant very dangerous despite technical, nonviolent violations. *Esteras* forbids using revocation to exact retribution for the original offense. The fourfold variance and the statement that the court would impose more show actual reliance. Finally, the court did not elicit

fully articulated objections under *Jones*. The revocation judgment and sentence should be vacated and Appellant released; at minimum, the Court should order an expedited remand that prohibits further reliance on the disputed material and prevents the remedy from becoming meaningless.

## STANDARDS OF REVIEW

Whether the district court possessed statutory authority under §§ 3605 and 3583(i) is reviewed de novo. *United States v. Bailey*, 259 F. App'x 227, 228 (11th Cir. 2007); *United States v. White*, No. 12-16214, slip op. at 3 (11th Cir. Feb. 19, 2014). Subject-matter and delayed-revocation questions are not forfeited by failure to raise them, although Appellant repeatedly raised them here.

The revocation decision is reviewed for abuse of discretion; underlying factual findings must be supported by a preponderance of sufficiently reliable evidence. *United States v. Frazier*, 26 F.3d 110, 112-14 (11th Cir. 1994). Constitutional due-process and confrontation questions are reviewed de novo, subject to harmless-error analysis. Whether the court complied with *Jones* is reviewed de novo. *United States v. Williams*, No. 24-14071, slip op. at 3-5 (11th Cir. Oct. 8, 2025).

A revocation sentence is reviewed for procedural and substantive reasonableness under the abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). Reliance on an impermissible factor or materially false information is procedural error; the substantive inquiry considers the totality of circumstances and the extent of the variance.

## ARGUMENT I

## THE DISTRICT COURT FAILED TO ESTABLISH AND ADJUDICATE ITS STATUTORY AUTHORITY, AND THE TRANSFER-AND-WARRANT PROCESS WAS FUNDAMENTALLY UNFAIR

### A. The record contained four incompatible jurisdictional dates and statuses.

Section 3605 authorizes a transferee court to exercise the powers of the sentencing court only after jurisdiction is transferred with the transferee court's concurrence. The available record identified at least four different markers: the Florida case was opened and marked terminated on November 22, 2024; Connecticut re-executed a form on December 4; Judge Barber reportedly accepted it on December 9 and Connecticut entered it on December 11; and Padilla testified that jurisdiction transferred in January 2025. (Doc. 1; June 25 Tr. 12:7-13; Aug. 26 Tr. 14-15.)

Those differences mattered. The alleged October conduct occurred before all four dates. The vehicle transaction occurred December 30—after the December acceptance date but before the January date Padilla supplied. And the Florida docket itself said the case was closed and terminated on November 22. The district court could not decide which court possessed authority at each point, whether the case remained active, whether supervision had ended, or whether § 3583(i) applied without first identifying the operative order and its effective date.

Appellant put the issue squarely before the court. Docket 10 reproduced the termination notation, identified the January warrant, stated that no notice had been provided, and challenged administrative and statutory jurisdiction. (Doc. 10 at 5-7.) He repeated the challenge on June 25, October 24, and December 12. (June 25 Tr. 10:11-13; Oct. 24 Tr. 12, 67-68; Dec. 12 Tr. 31, 38-40, 48.) A courtroom deputy's statement that everything had been ruled on could not substitute for a judicial ruling; Docket 10 remained unresolved. (Oct. 24 Tr. 12:16; Dec. 12 Tr. 39:18.)

**B. *Bailey* does not resolve the defects presented here.**

The Government will likely rely on *United States v. Bailey*, which held that once a valid § 3605 transfer occurs, the transferee court may revoke supervised release based on pre-transfer conduct. 259 F. App'x 227, 228-29 (11th Cir. 2007). Appellant does not ask this Court to disregard *Bailey*. *Bailey* makes the validity and timing of the transfer—not merely the date of the conduct—the decisive threshold question.

*Bailey* did not involve a docket marked closed and terminated, conflicting testimony that transfer occurred months later, counsel who was not informed, a direct pre-arrest filing asking whether a warrant existed, or missing docket entries containing the warrant basis. It also did not address whether withholding known violations from the transferor court and then delaying action under circumstances

misleading to the supervisee violates fundamental fairness. *Bailey* therefore defeats only the categorical proposition that pre-transfer conduct can never be considered; it does not answer the record and due-process defects here.

**C. Known pre-transfer allegations were withheld from Connecticut and counsel.**

Probation officers must keep informed concerning a supervisee's conduct and report it to the court. 18 U.S.C. § 3603(2). The Guidelines likewise direct prompt reporting of alleged violations. U.S.S.G. § 7B1.2(a). Before transfer, that court was Connecticut. Yet Padilla's three January allegations were based on events from May through October 2024. He testified that Connecticut was notified, but no comparable violation entry appears on the Connecticut docket, and Connecticut counsel Robert Frost was not informed.

*United States v. Tyler* is unusually close. There, the probation officer knew of violations, withheld them from an earlier petition, and later used them to revoke probation. The former Fifth Circuit held that the delay and piecemeal approach were fundamentally unfair and reversed. 605 F.2d 851, 852-54 (5th Cir. 1979). *Tyler* is binding in this Circuit under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). *Tyler* did not impose a mechanical first-violation filing rule, but it did require fairness where known violations are held back and later used to imprison the supervisee.

The prejudice here was concrete. Connecticut had taken "no action" on the Florida state case. (June 25 Tr. 7:5.) Restitution matters remained pending there. If Connecticut and Frost had been told that probation already considered the May-through-October events violations, Connecticut could have retained jurisdiction, required a response, resolved the restitution issues, clarified the end date, or transferred with a record preserving the allegations. Instead, the matters were withheld until after transfer and then used to obtain a secret warrant.

**D. Even if the transfer was valid, the closure and termination status required a ruling.**

The appeal does not depend solely on invalidating the transfer. Even if the December transfer was valid, the official docket displayed "CLOSED/PROB/SR TRAN" and "Terminated: 11/22/2024." (Aug. 26 Tr. 14-15; Doc. 10 at 5.) Judge Barber later stated that only a judge could close or terminate the case. On this record, the only reasonable inference is that a judicial or court-controlled action caused that status. The court therefore had to identify the order, explain its legal effect, and identify what later action reopened or restored the case before adjudicating violations.

A docket notation may ultimately prove administrative rather than jurisdictional. But the district court never made that finding. It instead treated the status as irrelevant while using Appellant's failure to behave as though supervision indisputably continued as proof of willfulness. At minimum, the official

termination display and Frost's "SR transferred and terminated" email defeated a finding that Appellant knowingly ignored supervision obligations. The same evidence cannot be disregarded for authority and then ignored again for willfulness.

To the extent the Government relies on delayed revocation, § 3583(i) requires a warrant or summons issued before expiration "on the basis of" an alleged violation and permits post-expiration adjudication only for a period reasonably necessary. *United States v. Young*, No. 25-11678, slip op. at 3-6 (11th Cir. Apr. 29, 2026). *Young* affirmed because law enforcement could not locate a defendant who had moved and evaded them. Here, Appellant remained at his known residence, filed in the case, directly asked about the warrant, and maintained a fifteen-year record of appearing. The Government cannot rely on a delay it chose while Appellant was openly available.

**E. Docket 10 and the secret-warrant sequence required adjudication.**

Docket 10 was not a post-arrest invention. Filed February 18, 2025, it expressly identified the January 14 warrant, stated that "no notification has been given," reproduced the termination status, and challenged the court's authority. (Doc. 10 at 5-7.) The court and Government therefore had actual notice that Appellant did not know whether a warrant existed and disputed the case's status.

Nevertheless, no letter, summons, direction to appear, or effort at the residence followed. The court continued accepting Appellant's filings while the warrant remained undisclosed until the June Wildwood encounter. Under the unusual circumstances, that was not merely ordinary execution of an arrest warrant. It created an inherently misleading situation and then converted the resulting delay into evidence against Appellant. *Tyler* condemns unreasonable delay and piecemeal revocation; persuasive authority likewise recognizes that revocation after circumstances inherently misleading to a probationer is an abuse of discretion. *United States v. Hamilton*, 708 F.2d 1412, 1415 (9th Cir. 1983).

This sequence also undercuts every suggestion that Appellant was hiding or refusing to appear. He was communicating with the court a month after the warrant, asking the very question the court declined to answer. Fundamental fairness required a response or prompt execution, not silence followed by detention and a portrayal of deliberate noncompliance.

**F. The incomplete record prevents meaningful review.**

The January 14 submission and Florida Dockets 2-7 contain the foundation for the warrant and the first exercise of revocation authority. Appellant repeatedly requested them. Docket 32 sought the January 14 records and was denied at Dockets 34-35. Docket 36 sought the June 25 and July 9 transcripts and was denied

at Docket 39. Docket 85 challenged expiration and was denied at Docket 90. Dockets 117 and 118 sought preservation and were denied at Docket 121.

Those materials may show what the Florida court was told about the transfer date, termination status, pending Connecticut matters, ability to pay, January restitution payment, and notice. Without them, the Court cannot determine whether the warrant was based on accurate facts or whether § 3583(i) was satisfied. The appropriate remedy is vacatur or, at minimum, supplementation and a remand for a reasoned threshold ruling before any merits adjudication.

## ARGUMENT II

## SUPERVISED RELEASE SHOULD NOT HAVE BEEN REVOKED

### A. Revocation required disclosed and reliable evidence.

A supervisee is entitled to written notice, disclosure of the evidence, an opportunity to be heard and present evidence, confrontation absent good cause, and a neutral decisionmaker. *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); Fed. R. Crim. P. 32.1(b)(2). Although the Federal Rules of Evidence do not apply, the court must find hearsay reliable and balance confrontation against the Government's reason for withholding the witness or evidence. *United States v. Frazier*, 26 F.3d 110, 113-14 (11th Cir. 1994).

The revocation court also must state the evidence and reasons supporting revocation. *United States v. Lacey*, 648 F.2d 441, 445 (5th Cir. Unit B 1981). The final judgment rested on three findings: failure to report, failure to disclose financial information, and obtaining new credit or a loan without approval. Each required separate reliable proof. Receipt of the November 4 instruction was the entire basis of the first; receipt of the alleged October 28 email was central to the second; and the official termination record and Appellant's understanding that supervision had ended were central to the third. The court did not resolve those disputes through findings supported by reliable evidence.

**B. The Government failed to prove receipt of the November 4 instruction.**

Padilla did not hand Appellant a letter. He did not knock, see Appellant, speak to another resident, obtain a signature, photograph Appellant receiving anything, or produce a contemporaneous acknowledgment. (Aug. 26 Tr. 11-13.) At October 24 he could not even identify which vehicle allegedly received the envelope. (Oct. 24 Tr. 41.) A paper left somewhere at a residence or on an unidentified windshield is not proof by a preponderance that the intended recipient received and understood a reporting command.

The email did not cure that gap. Padilla admitted the documents in the alleged envelope had already been provided to Appellant. (Oct. 24 Tr. 45.) Returning previously possessed documents therefore did not establish receipt of a separate reporting letter. Padilla also admitted the letter was not attached to the email. (Oct. 24 Tr. 46.) The email did not show Appellant's address or otherwise prove delivery to his account. (Oct. 24 Tr. 50-51.)

Nor did unproduced calls or texts establish notice. If Padilla had made calls or sent texts specifically directing a November 4 appearance, phone records or message copies would have been the most reliable evidence. None was produced. (Oct. 24 Tr. 46-47.) The court instead accepted the testimony of the witness whose descriptions had changed and whose claimed corroboration remained undisclosed.

### C. The contradiction chart defeats the finding of knowing noncompliance.

The sequence is best viewed side by side. Each change concerned a fact necessary to prove receipt, not an immaterial detail:

| Source | Government account | Conflict and significance |
|---|---|---|
| Alleged Oct. 28 email; Oct. 24 Tr. 45-51 | Padilla claimed an email requested financial records, but the recipient address and delivery proof were not shown; later returned documents had already been provided. | No reliable proof that Appellant received the October 28 request; the later communication could not prove a separate earlier email. |
| June 25 Tr. 11-14 | A letter or notice was left at the house on October 30 or 31. | No car or windshield; no personal delivery; transfer allegedly January 2025. |
| Aug. 26 Tr. 11-13 | Padilla first said October 30, then changed to October 31; he did not knock and "just left a notice." | The date changed during testimony and receipt remained unproved. |

| Source | Government account | Conflict and significance |
|---|---|---|
| Aug. 26 Tr. 12-13 | Appellant supposedly returned "the documents" through iCloud. | A later return of previously supplied documents does not prove receipt of a separate reporting letter. |
| Oct. 24 Tr. 19, 41 | The letter was placed on a car or windshield; Padilla could not identify the car. | Material change from the house account; no reliable chain of delivery. |
| Oct. 24 Tr. 45-46 | The documents were previously provided and the letter was not attached to the email. | The supposed corroboration did not contain the actual reporting instruction. |
| Oct. 24 Tr. 46-51 | Calls and texts were claimed but not produced; the email/address was not shown; no independent receipt verification existed. | Uncorroborated testimony could not carry the preponderance burden after repeated contradictions. |

| Source | Government account | Conflict and significance |
|---|---|---|
| Oct. 24 Tr. 47 | Only after November 4 and staffing with a supervisor was the matter deemed reportable. | Conflicts with the claim that Connecticut had already been notified and leaves the January delay unexplained. |

Padilla did not supervise Appellant for fifteen years; he supervised him for only approximately two years. The relevant fifteen-year history was Appellant's continuous record in the Connecticut case and related proceedings of reporting, remaining available, and appearing as required. (June 25 Tr. 12:14-25.) The Government's theory required the court to believe that Appellant abruptly abandoned that longstanding record because of an instruction that no reliable evidence showed he received. The evidence did not establish knowing noncompliance.

**D. The Government failed to prove receipt of the October 28 email or a knowing failure to disclose financial information.**

The second sustained finding was separate from the November 4 reporting allegation. It was a finding that Appellant failed to disclose financial information supposedly requested in an October 28 email. The Government therefore had to prove that the email was sent to Appellant, reached the correct account, communicated a clear request, and was knowingly disregarded. The record did not

display the recipient address, delivery confirmation, server record, acknowledgment, or other competent proof that Appellant received that October 28 message. (Oct. 24 Tr. 50-51.)

The later iCloud communication did not fill that gap. Padilla admitted that the documents Appellant later returned had previously been provided, and he admitted that the alleged reporting letter was not attached to the email. (Oct. 24 Tr. 45-46.) Returning previously possessed documents cannot prove receipt of a different October 28 request. Nor could an alleged request for bank statements prove receipt of a separate command to appear in person on November 4. The two findings could not bootstrap one another.

The alleged October 28 email also predated every asserted transfer date. Yet no comparable violation notice appears on the Connecticut docket, and Connecticut counsel was not informed. Because the Government failed to establish receipt and the court made no finding resolving the missing address and delivery proof, the failure-to-disclose finding was unsupported by a preponderance of reliable evidence.

**E. Hamilton's October 20 disclosure letter and the Brady/Giglio ruling denied a fair defense.**

The Government's October 20, 2025 disclosure was materially incomplete. Hamilton disclosed a limited list of selected documents but withheld the materials Rivernider had expressly requested in his September 10 and September 29, 2025

Brady/Giglio demands, including Docket 78 materials, "Complaints, Dkts. 2-7," investigative files, records associated with those docket entries, and related hearing transcripts. The Government also failed to disclose any emails, text messages, memoranda, notes, or substantive communications between AUSA Hamilton and Probation Officer Erik Padilla, although Padilla was the Government's principal witness and the source of the alleged violations.

The letter's opening statement makes the omission more serious. Hamilton wrote that Appellant had not made a formal or informal discovery request, although the September 10 and September 29 Brady/Giglio requests had already been sent. The Government therefore did not merely disagree about whether requested material was exculpatory. It proceeded from—and communicated—a materially incorrect premise that no request existed, disclosed only selected items, and later assured the court that there was "no Brady material." (Hamilton Letter dated Oct. 20, 2025, at 1; Oct. 24 Tr. 15, 35-46.)

Those communications were especially material after Rivernider filed Docket 86 seeking investigation of Padilla for alleged perjury and after the Government received the August 26 transcript shortly before the October 24 final hearing. Communications between Hamilton and Padilla could reveal Padilla's original account, inconsistent factual descriptions, discussions concerning testimony, transcript corrections or redactions, knowledge of Rivernider's perjury

allegations, and whether Padilla's testimony was revised or coordinated before the final hearing. Padilla himself confirmed that he communicated and worked with Hamilton during the investigation, including before the subpoena used to obtain the Hyundai records. (Aug. 26 Tr. 8.)

The omission of Dockets 2-7 was independently prejudicial. Those missing entries may contain the original probation petition, warrant materials, sealed submissions, or January 14, 2025 proceedings and may establish what Padilla originally reported, when the alleged violations were presented, whether the court was informed that the allegations predated transfer, and whether undisclosed judicial action occurred. The Government could not satisfy Rule 32.1(b)(2)(B) by selecting only some evidence while withholding the underlying evidence against Rivernider and potentially impeaching statements of its central witness.

The violation therefore extends beyond the undisclosed Gladson letter. It includes the Government's failure to disclose the original warrant and probation materials, Dockets 2-7, investigative files, requested hearing records, and communications with Padilla that could establish impeachment, inconsistent testimony, government knowledge, or coordination of the evidence presented against Rivernider.

Docket 78's two-vehicle allegation illustrates the resulting prejudice. The Government placed a damaging assertion in writing, portraying simultaneous

vehicle purchases, then failed to substantiate it when challenged. Hamilton said in substance that he did not remember the assertion, although it appeared in the Government's own filing. (Doc. 78 at 5; Oct. 24 Tr. 71:18-19.) The court neither corrected Docket 78 nor determined what reliable evidence supported one vehicle, two vehicles, or the changing amounts.

**F. Restitution nonpayment was not one of the three final findings and could not substitute for proof of them.**

The original petition alleged restitution nonpayment, but the final findings were failure to report, failure to disclose financial information, and obtaining new credit or a loan without approval. (Docs. 114-15.) Restitution therefore could not serve as an unarticulated alternative ground for affirmance.

The Government nevertheless used alleged nonpayment, inflated vehicle values, and the unsupported two-vehicle assertion to create an overall picture of deliberate financial concealment. That context explains the prejudice from the Brady/Giglio failures and the inaccurate sentencing narrative, but it did not relieve the Government of proving each of the three sustained violations with reliable evidence.

**G. The credit-or-loan finding arose after the case showed termination and was not proven knowing or willful.**

The vehicle transaction occurred on December 30, 2024—after the Florida docket displayed "Terminated: 11/22/2024" and after counsel's communication

that supervised release had been "transferred and terminated." (Aug. 26 Tr. 14-15; Oct. 24 Tr. 67-73.) The Government therefore had to prove not merely that a loan existed, but that Appellant knowingly opened new credit while understanding that an enforceable supervision condition still applied. The official docket and counsel's communication defeated that inference.

The supporting proof was also unreliable. Padilla had supervised Appellant for only approximately two years, was not present when the dealer documents were executed, and relied on records obtained from the dealer. (Aug. 26 Tr. 8-10.) He asserted that Appellant had not requested permission from him or any other officer, but no foundation showed personal knowledge of every communication with every officer. The Government's account shifted between one and two vehicles and among approximately $46,000, $61,000-$62,000, and $84,000-$85,000. A finding of knowing, willful violation could not rest on an unresolved termination status, a witness speaking beyond his personal knowledge, and materially inconsistent vehicle evidence.

**H. The court did not make adequate findings resolving the disputes.**

Due process requires a statement of the evidence and reasons for revocation. *Morrissey*, 408 U.S. at 489; *Lacey*, 648 F.2d at 445. For the reporting finding, the court did not determine which date was correct, where the document was left, what the envelope contained, or whether the actual reporting letter was delivered. For

the financial-information finding, it did not identify the recipient address, delivery proof, or evidence that the October 28 email was received. For the credit-or-loan finding, it did not resolve the official termination status, Appellant's understanding that supervision had ended, the one-versus-two-vehicle contradiction, the changing price, or Padilla's lack of personal knowledge concerning other officers.

The cumulative proof was not overwhelming, as in *Frazier*. It consisted of the same disputed witness account and materials whose absence prevented effective impeachment. Because the properly considered evidence did not independently establish the violations, the errors were not harmless. The revocation judgment itself—not merely the sentence—must be vacated.

## ARGUMENT III

## THE THIRTY-SIX-MONTH SENTENCE WAS UNLAWFUL

**A. The undisclosed William Gladson letter violated due process.**

A sentencing court may consider broad information only if it is reliable and the defendant has a meaningful opportunity to refute it. *United States v. Reme*, 738 F.2d 1156, 1167 (11th Cir. 1984). William Gladson's September 8 letter was marked "court only" and was not served on Appellant. Appellant did not obtain it until months after sentencing. (Gladson Letter at 1.) He therefore could not investigate its claims, challenge Gladson's terminology about the Florida ballot case, explain the state appeal, test the source of its ideological descriptions, or submit contrary evidence.

The court's occasional statement that it was not relying on the letter does not resolve the issue. The court physically held it, read it, and discussed it at the hearings. (Oct. 24 Tr. 78; Dec. 12 Tr. 18.) It also discussed Appellant's support for President Trump and spoke in the past tense—"were"—while imposing custody. (Dec. 12 Tr. 20.) A sentencing court cannot repeatedly use an undisclosed communication to frame character and then avoid review through a disclaimer. The question is actual use, and the transcript shows use.

The prejudice was heightened by Hamilton's assertion that no Brady material existed and the court's acceptance of that representation after Appellant

objected to the letter. Appellant lacked the document that was literally in the judge's hands. That is the opposite of the opportunity to refute required by *Reme*.

**B. The court sentenced Appellant on materially inaccurate loss information.**

Due process is violated when challenged information is materially false or unreliable and actually serves as a basis for sentence. *United States v. Taylor*, 931 F.2d 842, 847 (11th Cir. 1991); *Reme*, 738 F.2d at 1167. Both elements are present.

First, the information was materially inaccurate. Padilla testified that approximately $22.1 million remained owed in restitution. (Aug. 26 Tr. 9.) The court converted that balance or loss measure into a finding that Appellant had been convicted of "stealing $22 million." (Oct. 24 Tr. 64-66.) At sentencing the characterization expanded to more than $26 million and nearly 100 people. (Dec. 12 Tr. 56.) Restitution owed, guideline loss, actual loss, and personal gain are distinct concepts. The Connecticut judgment specifically recognized that the harm was greatly increased by the collapse of the real-estate market and addressed limited financial benefit. (Connecticut Judgment at 2-4; Dec. 12 Tr. 26-27.)

Second, the court actually relied on the distortion. When Appellant corrected it, the court rejected the correction by saying, "That's what the document says." (Oct. 24 Tr. 66:3-7.) The court never identified the document, compared it with the Connecticut judgment, or withdrew the statement. It returned to the number of victims, public victimization, and financial harm in imposing the maximum. The

false narrative directly supported the court's view of danger and its desire to impose more time.

The same problem affected the Hyundai. An approximately $46,000 vehicle was presented as $61,000-$62,000 and then $84,000-$85,000, while Docket 78 falsely or without support described two simultaneous vehicles. Those figures made the financial conduct appear far more extravagant and deliberate than the evidence permitted. The sentence cannot be affirmed on an inaccurate composite picture.

**C. The court impermissibly returned to punishment for the original offense.**

Section 3583(e) directs courts to a specified subset of § 3553(a) factors and omits the retributive factor in § 3553(a)(2)(A). *Esteras v. United States* holds that a court may not revoke supervised release or impose revocation imprisonment to exact retribution for the underlying crime. 145 S. Ct. 2031, 2039-45 (2025). Revocation consequences are attributable to the original conviction for constitutional purposes, *Johnson v. United States*, 529 U.S. 694, 700-01 (2000), but § 3583(e) is forward-looking and does not authorize a second punishment of that conviction.

The transcript shows reliance expressly or by unmistakable implication. On October 24 the court asked about the original sentence, the amount of time served, and the Connecticut judge who granted compassionate release. (Oct. 24 Tr. 3, 7:8-

20.) It repeatedly characterized the original case as a $22 million scheme. (Oct. 24 Tr. 14, 64-66.) At sentencing it returned to nearly 100 victims, more than $26 million, public victimization, and deterrence of "other such people." (Dec. 12 Tr. 52, 56.) Those subjects dwarfed the technical Grade C violations.

The Government may argue that the court was assessing history, deterrence, or breach of trust. But permissible labels cannot insulate unmistakably retributive reasoning. The court's concern was not merely that Appellant failed to report or seek credit approval; it was that the Connecticut sentence and compassionate release had not punished the original financial case enough. *Esteras* forbids that purpose.

**D. The dangerousness finding and fourfold variance were unsupported.**

The advisory range was three to nine months. The court imposed thirty-six months—four times the top of the range—and stated that if it could impose more, it probably would because Appellant was very dangerous. (Dec. 12 Tr. 52.) The violations were technical and nonviolent. No violation involved violence, weapons, threats, physical harm, or an identified risk of physical danger.

A court may consider protection of the public, but it must select sentence based on facts that are not clearly erroneous and explain a major variance with a correspondingly compelling justification. *Gall*, 552 U.S. at 50-51. Here the danger finding was built from the Gladson letter, disputed state allegations, inflated

vehicle and loss figures, and the original offense. Once those unreliable and impermissible matters are removed, the record contains no support for labeling Appellant "very dangerous."

The sentence was procedurally unreasonable because the court used inaccurate facts, undisclosed material, and retribution; failed to resolve material objections; and did not anchor the maximum to the violation conduct. It was substantively unreasonable because the maximum was greater than necessary for technical violations, far outside the policy range, and accompanied by an expressed wish to punish more.

**E. The court violated *Jones*.**

After imposing sentence, a district court must elicit fully articulated objections to its findings, conclusions, and manner of imposing sentence. *United States v. Jones*, 899 F.2d 1097, 1102 (11th Cir. 1990). The rule applies to supervised-release revocation. *United States v. Campbell*, 473 F.3d 1345, 1348 (11th Cir. 2007). A generic question such as whether there is "anything further" is insufficient.

The court did not ask Appellant to articulate objections to the Gladson letter, $22 million finding, use of the original offense, danger finding, fourfold variance, or the court's desire to impose more. The Eleventh Circuit recently vacated a revocation sentence for the same failure. *United States v. Williams*, No. 24-14071,

slip op. at 3-6 (11th Cir. Oct. 8, 2025). The violation matters especially here because Appellant was pro se and had never been given the document the court discussed. His objections should not be treated as forfeited; the sentence should be vacated.

**F. Cumulative error requires meaningful relief.**

The errors reinforced one another. An unresolved transfer and termination record supported a secret warrant; the warrant materials remained unavailable; changing notice testimony produced revocation; disclosure requests were denied through a bare "no Brady" assurance; and the same inaccurate record culminated in a maximum sentence based on the original case and an undisclosed state-prosecutor letter. The proceeding as a whole did not satisfy fundamental fairness.

Appellant has already served longer than the three-to-nine-month advisory range. A routine remand could consume the remaining term and permit new supervised release, making success meaningless. Because the revocation findings should be vacated, the Court should direct immediate release. Alternatively, it should issue the mandate promptly, require an expedited hearing, bar reliance on disputed materials, and direct a sentence no longer than time served with no further supervised release. It should also preclude a harsher package imposed to penalize this appeal.

## CONCLUSION

The Court should vacate the revocation judgment and thirty-six-month sentence and direct Appellant's immediate release. Alternatively, the Court should vacate the sentence and remand on an expedited basis with instructions that the district court: (1) decide the statutory-authority and record-completeness issues on a supplemented record; (2) exclude or permit meaningful rebuttal of the William Gladson letter and other undisclosed materials; (3) correct the $22 million, victim, and vehicle inaccuracies; (4) refrain from imposing retribution for the original offense; and (5) impose no additional imprisonment beyond time served and no further supervised release. The Court should grant any further relief necessary to ensure that the appeal produces meaningful relief before the custodial term expires.

Respectfully submitted,

/s/ Robert Rivernider

Robert Rivernider, Pro Se
Reg. No. 96006-004
FCI Beckley Satellite Camp
P.O. Box 350
Beaver, West Virginia 25813

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the portions exempted by Rule 32(f), it contains 7,299 words. This brief complies with the typeface and type-style requirements of Rule 32(a)(5)-(6) because it was prepared in a 14-point proportionally spaced serif typeface.

Respectfully submitted,

/s/ Robert Rivernider

Robert Rivernider, Pro Se
Reg. No. 96006-004
FCI Beckley Satellite Camp
P.O. Box 350
Beaver, West Virginia 25813

## CERTIFICATE OF SERVICE

I certify that on July 21, 2026, a true and correct copy of this Appellant's Opening Brief was placed in the United States Mail, first-class postage prepaid, addressed to:
Office of the United States Attorney
Middle District of Florida
207 N.W. Second Street, Suite 257
Ocala, Florida 34475-4780
The original brief was separately placed in the United States Mail for filing with:

David J. Smith, Clerk of Court
U.S. Court of Appeals for the Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303.

Respectfully submitted,

/s/ Robert Rivernider
Robert Rivernider, Pro Se
Reg. No. 96006-004
FCI Beckley Satellite Camp
P.O. Box 350
Beaver, West Virginia 25813

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

PAPER POUCH how2recycle.info

...ATES
...VICE®

PRIORITY®
MAIL

...for domestic use.
...of insurance (restrictions apply).*
...for domestic and many international destinatio...

...oms declaration form is required.
...details regarding claims exclusions see the
...usps.com for availability and limitations of coverage.

...ELOPE

U.S. MARSHALS SERVICE
11th Circuit Court of Appeals (COA)
JUL 24 2026
CLEARED SECURITY

...RED

To schedule free Package Pickup
scan the QR code.

USPS.COM/PICKUP

PAPER POUCH how2recycle.info

EP14F October 2023
OD: 12 1/2 x 9 1/2

UNITED STATES POSTAL SERVICE. Click-N-Ship®

P

usps.com
$11.12
US POSTAGE

9405 5301 0935 5406 6783 29 0111 2001 0003 0303

U.S. POSTAGE PAID

07/21/2026
1 lb 0 oz

Mailed from 34785 208587056612499

PRIORITY MAIL®

ROBERT RIVERNIDER
14 S BOBWHITE RD
WILDWOOD FL 34785-9011

Created 2026-07-20
Flat Rate Envelope
RDC 03
C007

US APPEALS CT - 11TH CIRCUIT
CLERK OF THE COURT
56 FORSYTH ST NW
ATLANTA GA 30303-2218

USPS TRACKING #

9405 5301 0935 5406 6783 29

LEGAL MAIL
CASE No 25-14369-J