# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

**UNITED STATES OF AMERICA,**

Plaintiff–Appellee,

U.S. COURT OF APPEALS
RECEIVED
CLERK
JUN 08 2026
ATLANTA, GA

v.

**ROBERT H. RIVERNIDER,**

Defendant–Appellant, Pro Se.

Case No. 25-14369

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:24-cr-00138-TPB-PRL-1

## RENEWED EMERGENCY MOTION FOR IMMEDIATE RELEASE PENDING APPEAL, TO PRODUCE ORIGINAL AUDIO RECORDINGS, TO PRODUCE COMPLETE UNREDACTED AND UNALTERED TRANSCRIPTS, TO EXPEDITE TRANSMISSION OF THE COMPLETE RECORD, AND FOR RELATED RELIEF

## EMERGENCY RELIEF REQUESTED

Appellant Robert H. Rivernider, proceeding pro se, respectfully renews his Emergency Motion for Immediate Release Pending Appeal and requests production and preservation of the original audio recordings, complete unredacted and unaltered transcripts, disclosure of any requested transcript redactions, alterations, corrections, or changes, and all record materials necessary for meaningful appellate review.

Expedited consideration is requested because Appellant has now served more than **eleven (11) months** in custody since his arrest on June 24, 2025, substantially exceeding the advisory

guideline range of **three (3) to nine (9) months** discussed during the revocation proceedings. Absent immediate relief, Appellant risks serving the effective custodial portion of the sentence before this appeal can be fully litigated.

This motion is renewed pursuant to the Court's Order entered April 23, 2026 reinstating this appeal.

## I. INTRODUCTION

This appeal concerns the legality of the district court's exercise of jurisdiction over Appellant's supervised release proceedings, the validity of the warrant issued in this matter, the reliability of the evidence relied upon by the district court, the accuracy and completeness of transcripts, and the sentence ultimately imposed.

The sentence in this matter was imposed on December 12, 2025. Nearly six months later, Appellant still has not received the complete record necessary to prosecute this appeal.

The primary record relief now required is preservation and production of the original audio recordings of all proceedings, together with complete unredacted and unaltered transcripts. The June 25, 2025 and August 26, 2025 proceedings were digitally recorded; no live court reporter was present in the courtroom. The transcripts were later produced from electronic sound recordings. Because Appellant disputes the accuracy of portions of the August 26 transcript, and because the transcripts themselves state they were produced from electronic sound recordings, the original audio recordings are the best evidence of what occurred.

Appellant has serious concern regarding the accuracy, completeness, alteration, and possible redaction of transcripts in this case. The concern is not speculative. The August 26, 2025

transcript already reflects terminology materially different from that used during earlier proceedings regarding the alleged "letter" left by Probation Officer Padilla. Because several proceedings were recorded electronically rather than by a live court reporter, the original audio recordings constitute the best evidence of what occurred and should be preserved and produced before any further transcripts are finalized, modified, corrected, altered, or redacted.

At the current pace, the appeal may extend beyond the effective custodial portion of Appellant's sentence once good-conduct time and First Step Act credits are properly applied. Continued incarceration under these circumstances constitutes irreparable harm and risks rendering the appeal meaningless.

## II. GROUNDS FOR RELEASE PENDING APPEAL AND RECORD RELIEF

A. The Appeal Raises Substantial Questions Regarding Jurisdiction

This appeal raises substantial questions regarding whether the Middle District of Florida ever lawfully obtained jurisdiction over Appellant's supervised release.

Appellant contends that the transfer of supervised release jurisdiction from the District of Connecticut to the Middle District of Florida was invalid because the District of Connecticut was not informed of pending alleged supervised release violations at the time transfer was requested and accepted.

At the time jurisdiction was transferred, Appellant's supervised release was scheduled to expire in less than six months. The District of Connecticut had supervised Appellant for approximately four and one-half years. There was no legitimate practical need to transfer supervision to the

Middle District of Florida so late in the supervision term, particularly where the alleged violations had not been disclosed to the District of Connecticut before transfer. Appellant contends the timing and circumstances of the transfer support his argument that the transfer was sought to obtain a more favorable forum after alleged violations had already occurred.

The missing docket entries in the district court proceedings, specifically docket entries 2 through 7, may contain communications or representations relating to the transfer and warrant proceedings.

In addition, Appellant contends that supervised release had already expired prior to initiation of the revocation proceedings once First Step Act credits are properly applied to the aggregate sentence.

Appellant's supervised release began on May 14, 2020. Appellant contends that earned First Step Act credits from the original sentence reduced the effective expiration date of supervised release to approximately September 2024, prior to the challenged transfer proceedings and alleged violations.

Section 3583(e) gives district courts authority both to "terminate" and to "revoke" a term of supervised release. Section 3583(e)(1) authorizes termination of supervised release. In Johnson v. United States, 529 U.S. 694, 704 (2000), the Supreme Court discussed the statutory distinction between termination and revocation. Appellant contends that when supervised release is terminated, it is ended, and the defendant is discharged from court supervision.

Here, the public docket reflected "CASE CLOSED" and "TERMINATED." Appellant raised this issue in writing, in court, and at sentencing. Appellant also emailed Connecticut counsel

Robert Frost in December 2024, before the January 2025 warrant proceedings, and counsel confirmed the docket reflected transfer and termination. This directly relates to Appellant's belief, counsel's understanding, and the jurisdictional question whether supervised release remained in effect.

Had Connecticut counsel Robert Frost been informed of the proposed transfer before jurisdiction was moved to Florida, counsel could have opposed transfer in the District of Connecticut. On November 18, 2024, before the transfer, a judge in the same courthouse had issued an order recognizing that First Step Act credits could apply toward supervised release. Appellant contends counsel could have argued that supervised release had already expired in or around September 2024, before transfer. Even if that ruling was later reversed, the Connecticut court would have had to either accept or reject that argument before transfer. The failure to notify Appellant or counsel of the alleged violations and transfer request caused direct jurisdictional prejudice.

The appeal therefore presents substantial jurisdictional questions directly affecting the legality of the revocation proceedings.

B. Due Process Violations Relating to Transfer and Lack of Notice

Appellant further contends that due process was violated because alleged violations were not disclosed to Appellant, his Connecticut counsel, or the District of Connecticut before transfer jurisdiction was requested.

If the District of Connecticut had been informed that alleged violations existed before transfer, and if Appellant's counsel had been notified, counsel could have opposed transfer and argued

that supervised release had already expired or should have been deemed expired based on First Step Act credits and then-existing authority in the District of Connecticut.

Instead, the case was transferred without notice to Appellant or counsel of the pending or contemplated violation allegations. This deprived Appellant of the opportunity to litigate jurisdiction before the sentencing and supervising court that had overseen the case for years.

C. The Appeal Raises Substantial Questions Regarding Reliability of Evidence, Witness Credibility, and Sentencing

The revocation proceedings depended substantially upon testimony and representations made by Probation Officer Padilla.

Appellant previously filed motions establishing that Probation Officer Padilla made materially inconsistent statements regarding a letter allegedly left at Appellant's residence.

Specifically, Appellant recalls extensive questioning regarding a letter left at his residence. The issue is material because the alleged letter was central to the claimed supervised release violations, including whether Appellant received the letter, whether Probation Officer Padilla accurately described what occurred, and whether the district court relied on materially inaccurate testimony.

Appellant further contends that Probation Officer Padilla's description of the alleged October 2024 communication changed over time. At the June 25, 2025 hearing, court-appointed counsel referred to "the letter that was left at the house." At the August 26, 2025 hearing, the transcript states that Probation Officer Padilla referred to a "notice" left at Appellant's home and then to

"documents" allegedly emailed back through Appellant's iCloud account. Appellant further recalls testimony during the October 24, 2025 revocation hearing that the item was placed on Appellant's vehicle windshield.

These inconsistencies are material because the alleged letter, notice, or documents formed part of the basis for the alleged failure-to-report and failure-to-provide-financial-information violations. Appellant previously moved for an investigation regarding the probation officer's statements. The shift from "letter" to "notice" or "documents," and Appellant's recollection that the story later became a placement on a car windshield, reinforces the need for the original audio recordings and complete unredacted and unaltered transcripts so that the Court can determine what was actually said and whether the probation officer's testimony was reliable.

The transcripts and original audio recordings are therefore critical because they will establish the exact testimony provided by the probation officer and whether materially false statements were presented to the district court.

Appellant further contends that statements relied upon during sentencing were materially false or misleading, including:

1. statements regarding the underlying Connecticut case;
2. assertions that Appellant "stole $21 million"; and
3. the Government's assertion in district court docket entry 78, page 5, that Appellant "simultaneously purchased two vehicles."

Appellant disputes these assertions and contends they materially affected the sentence imposed.

Appellant further contends that losses associated with the underlying Connecticut case were substantially impacted by the collapse of the real estate market during the 2008 financial crisis, rather than theft of funds as characterized during sentencing.

The transcripts are also necessary because, at sentencing, the district court asked Appellant how much time he had already served on the original sentence. When Appellant stated that he had served approximately eighty (80) months, the court imposed the maximum thirty-six-month revocation sentence and stated words to the effect of, "I would give you more if I could."

Appellant contends this statement shows that the sentence was influenced by the court's view that Appellant's sentence had previously been reduced to time served, rather than by the alleged supervised release violations themselves.

The Connecticut court reduced Appellant's sentence to time served after Appellant completed approximately eighty (80) months in federal custody. Appellant completed that custodial sentence without receiving the benefit of First Step Act credits that did not yet exist when sentence was imposed. Appellant contends he completed the effective custodial portion of the sentence under the statutes, case law, and Bureau of Prisons program statements governing sentence calculation and credits.

Any increase in the revocation sentence based on Appellant's prior sentence reduction to time served, his medical vulnerability during the COVID-19 public health emergency, or disagreement with the Connecticut court's release decision would be improper and materially prejudicial.

D. The Gladson Letter Demonstrates Reliance on Improper Sentencing Considerations and Materially Disputed Facts

Appellant has now obtained a copy of the September 8, 2025 letter submitted by Florida State Attorney William Gladson to the district court, attached as Exhibit A.

The letter expressly urged the district court to impose a lengthy prison sentence and specifically referenced Appellant's "beliefs" and "ideology" as reasons why leniency should be denied.

The letter states:

"His beliefs, ideology, and most importantly, his behavior... offend every notion of decency and respect for the law."

The letter further states that Appellant was "not deserving of any leniency."

The letter also urged the district court to consider that Appellant's original federal sentence had previously been reduced to time served, describing that relief as having been "graced with an early release from his 144-month federal prison sentence."

Appellant objects to that characterization. The Connecticut court reduced Appellant's sentence to time served after Appellant had completed approximately eighty (80) months in federal custody and after considering Appellant's health, medical vulnerability, and the COVID-19 public health emergency. Appellant did not receive the benefit of First Step Act credits that did not exist when he was sentenced.

Appellant contends that sentencing decisions must be based upon the factors set forth in 18 U.S.C. § 3553(a), not upon disagreement with a defendant's beliefs, ideology, political viewpoints, or resentment that another federal judge previously reduced a sentence to time served.

The letter further appears to advocate a harsher sentence based upon Appellant's prior sentence reduction rather than the conduct actually before the court in the revocation proceeding.

The Gladson letter also stated that Appellant "unlawfully cast a ballot belonging to his deceased father." Appellant disputes that characterization as materially incomplete and misleading. The original complaint from the Supervisor of Elections stated that no vote was cast. Appellant further states that no vote was counted. The ballot itself was never shown to the jury during trial. After the jury had left the courtroom, the trial judge handled an envelope, and a ballot fell out and was presented to the judge. The ballot therefore was not shown to the jury during deliberations.

Accordingly, the Gladson letter presented the state case to the federal sentencing court in a materially prejudicial manner. The letter characterized Appellant as having unlawfully cast a ballot, while Appellant contends the state record showed no vote was cast, no vote was counted, and the ballot was not shown to the jury.

The Gladson letter also helps explain why the Florida prosecution and state conviction may have improperly influenced detention and sentencing in this federal revocation case. At the June 25, 2025 hearing, Probation Officer Padilla and the Government relied in part on the Florida case in arguing that Appellant should remain detained. The district court later imposed the statutory

maximum thirty-six-month revocation sentence despite an advisory guideline range of three (3) to nine (9) months.

When viewed together, the Gladson letter, the Florida case, the detention arguments, and the sentencing record raise substantial questions regarding whether the sentence was influenced by factors unrelated to the alleged supervised release violations, including Appellant's beliefs, ideology, prior sentence reduction to time served, and disputed state-case allegations.

Because the Gladson letter contained disputed and prejudicial information, Appellant requests production of any additional letters, emails, memoranda, victim-impact submissions, outside communications, or ex parte materials submitted to or received by the district court concerning Appellant, sentencing, revocation, detention, or supervised release, including any materials similar to the September 8, 2025 Gladson letter.

The Gladson letter is therefore material to this appeal and to Appellant's request for immediate release pending appeal.

E. Delay in Production of Transcripts, Audio Recordings, and Record Materials

According to communications received from the court reporter and clerk's office, certain transcripts necessary for this appeal have already been completed.

Appellant has been informed that transcripts were available and would be transmitted upon payment.

Funding through the Criminal Justice Act has now been approved. Nevertheless, transmission of the full record continues to be delayed.

Appellant has also been informed that transcript deadlines have been extended until June 22, 2026.

Appellant further notes that the remaining proceedings to be transcribed appear to total less than three hours. Appellant respectfully submits that a delay until June 22, 2026 is unreasonable under these circumstances, especially where Appellant remains incarcerated beyond the advisory guideline range. The extended delay heightens Appellant's concern regarding the accuracy, completeness, alteration, and possible redaction of transcripts and further supports production of the original audio recordings.

The continued delay is causing substantial prejudice while Appellant remains incarcerated.

The transcript delay is especially prejudicial because Appellant has already served more than eleven months in custody while awaiting appellate review. The remaining proceedings appear to total less than three hours of court time. Nevertheless, transcript deadlines have been extended until June 22, 2026. Under these circumstances, continued delay risks mooting meaningful appellate review before Appellant can obtain the record necessary to prosecute this appeal.

If transcripts or audio recordings are already available, the Court should order immediate transmission of all completed transcripts, original audio recordings, and complete unredacted and unaltered record materials without further delay so that this appeal may proceed.

Appellant is concerned that prolonged delays in production of transcripts and recordings central to the jurisdictional and sentencing issues raised on appeal may impair Appellant's ability to obtain timely and meaningful appellate review.

F. Documentary Evidence Establishes the Transcripts Were Already Available

Appellant has obtained documentary evidence demonstrating that certain transcripts in this appeal were substantially completed and available well before the most recent extension request filed in this Court.

Specifically, on April 3, 2026, the official court reporter advised Appellant's family representative in writing that the transcripts from the July 9, 2025, October 24, 2025, and December 12, 2025 proceedings were available and could be purchased. See Exhibit B.

The court reporter further represented that the proceedings totaled approximately 175 pages and stated:

"As soon as I receive payment, I will begin transcribing the proceedings and will complete the transcript(s) in 30 days or less."

Appellant was subsequently informed that Criminal Justice Act funding for the transcripts had been approved.

Despite this, an Application for Extension of Time to File Transcript was later filed in this appeal extending transcript deadlines until June 22, 2026. See Exhibit C.

As a result, nearly six months after sentencing, Appellant still does not possess the full record necessary to prosecute this appeal while remaining incarcerated.

To the extent transcripts, audio recordings, or portions thereof have already been completed, Appellant respectfully requests that the Court order immediate transmission without awaiting additional extension deadlines.

The April 3, 2026 email correspondence attached as Exhibit B further demonstrates that the official court reporter advised Appellant's family representative that the transcripts were already available and could be purchased immediately. Specifically, the court reporter stated: "The transcripts are available whenever he is ready to purchase." This representation appears inconsistent with the subsequent requests for additional transcript extensions and further supports Appellant's request for immediate production of all completed transcripts, original audio recordings, and complete unredacted and unaltered record materials.

G. Request for Original Audio Recordings, Unaltered Record, and Complete Unredacted and Unaltered Transcripts

Appellant requests that the primary focus of record relief be preservation and production of the original audio recordings for all proceedings, together with complete unredacted and unaltered transcripts.

The need for the original audio recordings is particularly acute because Appellant has identified material inconsistencies concerning one of the central factual issues in the revocation proceedings. At the June 25, 2025 hearing, the matter was described as a “letter” left at Appellant’s residence. In the August 26, 2025 transcript, the matter became a “notice” and later “documents.” Appellant further recalls testimony during the October 24, 2025 hearing that the

item was placed on Appellant's vehicle windshield. These differing descriptions concern the same alleged communication and directly affect the credibility of the Government's evidence and Probation Officer Padilla's testimony. The original audio recordings are therefore necessary to determine precisely what was said during each proceeding.

The June 25, 2025 and August 26, 2025 proceedings were digitally recorded; no live court reporter was present in the courtroom. The transcripts were later produced from electronic sound recordings.

Appellant requests production of the original audio recordings for June 25, 2025 and August 26, 2025.

Appellant further requests that the district court certify whether any January 14, 2025 hearing, conference, proceeding, ex parte communication, or audio recording exists.

Prior to sentencing on December 12, 2025, while housed at Marion County Jail, Appellant received correspondence from the Clerk's Office indicating that parties could request redactions relating to transcripts in this matter.

Because the transcripts and recordings in this appeal directly concern jurisdictional issues, witness testimony, sentencing proceedings, and statements relied upon by the district court, Appellant respectfully requests preservation and production of the complete unredacted and unaltered transcripts and appellate record.

Appellant further requests that, to the extent any party, agency, or individual requested or proposed redactions, alterations, changes, or corrections relating to transcripts or record materials

in this case, Appellant be notified regarding the nature and scope of such requested redactions, alterations, changes, or corrections.

The transcripts and original audio recordings are central to Appellant's claims regarding jurisdiction, the validity of the warrant proceedings, the testimony of Probation Officer Padilla, and the factual basis relied upon during sentencing.

Accordingly, preservation and production of a complete, unaltered, and unredacted appellate record is necessary to ensure meaningful appellate review.

H. Dispute Regarding Accuracy of August 26, 2025 Transcript and Request for Audio Preservation

Appellant disputes the accuracy and completeness of the August 26, 2025 transcript.

Appellant specifically recalls an extensive exchange during which he questioned Probation Officer Padilla regarding a letter allegedly left at Appellant's residence. Appellant recalls that the discussion concerned a "letter" left at the residence.

The certified transcript presently provided refers to a "notice" and "documents," including testimony that Appellant allegedly "emailed me back the documents that I provided to him via his iCloud account." Appellant contends this does not accurately reflect the exchange as it occurred in open court.

This issue is material. The alleged letter was central to the claimed supervised release violations, including whether Appellant received the letter, whether Probation Officer Padilla accurately described what occurred, and whether the district court relied on materially inaccurate testimony.

Appellant requested access to the audio recording. The court reporter advised that Appellant would have to ask the Clerk's Office, and that her understanding was that audio files are not available to the public.

Appellant has serious concern regarding the accuracy, completeness, alteration, and potential redaction of all transcripts generated in this case, especially transcripts generated from digital audio recordings rather than live courtroom reporting. Appellant does not rely on unrelated cases to prove misconduct here. Rather, Appellant seeks ordinary appellate protection: preservation of the original audio recordings, production or in camera review of those recordings, disclosure of any requested redactions or changes, and correction or settlement of the record under Federal Rule of Appellate Procedure 10(e).

Because there is now a material dispute regarding whether the transcript truly discloses what occurred in the district court, Appellant respectfully requests that the Court order preservation of the August 26, 2025 audio recording, production of the audio recording for review by Appellant or the Court, and correction or settlement of the record pursuant to Federal Rule of Appellate Procedure 10(e).

Appellant further requests that no transcript be redacted, altered, changed, corrected, or transmitted as final without preservation of the original audio recording and disclosure of any requested redactions, alterations, changes, or corrections.

I. Prior Motion to Preserve Records Was Denied

After sentencing, Appellant moved the district court to preserve all records in this matter.

That motion was denied.

Given Appellant's current dispute regarding the accuracy of the August 26, 2025 transcript, the existence of digitally recorded proceedings, the unresolved question whether any January 14, 2025 proceeding or communication occurred, and the failure to provide Appellant with complete docket materials, preservation of all original recordings and record materials is necessary.

J. Ongoing Inability to Access Orders and Docket Materials

Appellant further requests relief because this case has involved an ongoing pattern of docket entries and court orders being entered without Appellant receiving timely mailed copies and without family members being able to view the underlying documents through the public docket.

This problem has existed since the beginning of the Middle District of Florida proceedings, including missing or inaccessible docket entries 2 through 7. Appellant is incarcerated and must rely on mailed orders and limited family access to docket information. When orders are entered but cannot be viewed on the public docket and are not mailed to Appellant, Appellant is deprived of meaningful notice.

This creates serious prejudice because certain orders trigger fourteen-day deadlines to respond, object, seek reconsideration, or pursue appellate relief. Appellant cannot meaningfully comply with deadlines for orders he cannot read and does not receive.

Judge Lammens previously directed that the Clerk send Appellant orders entered by the court. Appellant did not receive those orders.

This ongoing lack of access further supports expedited production of the complete record, immediate mailing of all orders and docket entries to Appellant, and preservation of Appellant's rights to challenge any order not timely served on him.

K. Irreparable Harm and Need for Immediate Release

Appellant has now served more than eleven months in custody for alleged technical violations.

The sentencing guideline range referenced during the proceedings was three (3) to nine (9) months.

The continued delay in producing transcripts, audio recordings, and the complete record threatens to moot meaningful appellate review because Appellant may complete the effective custodial portion of the sentence before the appeal can be adjudicated.

Once good-conduct time and First Step Act credits are properly applied, Appellant contends the remaining custodial exposure is substantially reduced.

Appellant also has severely limited access to legal materials and transcript review while incarcerated, substantially impairing his ability to prosecute the appeal.

Under these circumstances, continued incarceration pending appeal is unjust and unnecessary.

## III. REQUEST FOR RELIEF

WHEREFORE, Appellant respectfully requests that this Court:

1. Grant immediate release pending appeal;

2. Order preservation and production of the original audio recordings for all proceedings, including June 25, 2025 and August 26, 2025;
3. Order the district court to certify whether any January 14, 2025 hearing, conference, proceeding, ex parte communication, or audio recording exists;
4. Order immediate transmission of all completed transcripts currently available;
5. Order the district court to immediately authorize and transmit any remaining approved CJA payments necessary for release of transcripts;
6. Order production of the complete appellate record, including docket entries 2 through 7 and all materials relied upon by the district court;
7. Order that the September 8, 2025 Gladson letter, attached as Exhibit A, be included in the appellate record and considered as part of the sentencing record;
8. Order production of any additional letters, emails, memoranda, victim-impact submissions, outside communications, or ex parte materials submitted to or received by the district court concerning Appellant, sentencing, revocation, detention, or supervised release, including any materials similar to the September 8, 2025 Gladson letter;
9. Order certification regarding whether any ex parte communications or proceedings occurred relating to issuance of the arrest warrant;
10. Expedite consideration of this appeal and all related motions;
11. Order immediate transmission of any completed transcripts currently in existence and preservation of the complete and unaltered appellate record;
12. Order preservation and production of complete unredacted and unaltered transcripts and require disclosure of any requested or proposed transcript redactions, alterations, changes, or corrections relating to this appeal;

13. Order preservation and production, or in camera review, of the August 26, 2025 audio recording and correction or settlement of the transcript under Federal Rule of Appellate Procedure 10(e);

14. Order that Appellant be served by mail with all orders, sealed or restricted docket entries that may be disclosed to Appellant, and any docket materials necessary to preserve his appellate rights, and that any response or objection deadline run from actual service on Appellant;

15. Grant such other relief as this Court deems just and proper.

Respectfully submitted,

Robert H Rivernider

With Permission

ELECTRONIC SIGNATURE: /s/ Robert H Rivernider

Robert H. Rivernider
Appellant, Pro Se
Reg. No. 96006-004
FCI Beckley Satellite Camp
P.O. Box 350
Beaver, West Virginia 25813

Date: June 1, 2026

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Renewed Emergency Motion for Immediate Release Pending Appeal, to Produce Original Audio Recordings, to Produce Complete Unredacted and Unaltered Transcripts, to Expedite Transmission of the Complete Record, and for Related Relief was placed in the US Mail on this 1st day of June, 2026, addressed to:

Office of the United States Attorney
Middle District of Florida

Robert H Rivernider

With Permission

ELECTRONIC SIGNATURE: /s/ Robert H Rivernider

Robert H. Rivernider
Appellant, Pro Se

Reg. No. 96006-004
FCI Beckley Satellite Camp
P.O. Box 350
Beaver, WV 25813

# EXHIBIT A

September 8, 2025 Gladson Letter

WALTER A. FORGIE
CHIEF ASSISTANT STATE ATTORNEY

CINDY T. HARPER
EXECUTIVE DIRECTOR

Reply to:

110 N.W. FIRST AVENUE
SUITE 5000
OCALA, FL 34475
TELEPHONE (352) 671-5500

WILLIAM M. GLADSON
STATE ATTORNEY
FIFTH JUDICIAL CIRCUIT OF FLORIDA
CITRUS, HERNANDO, LAKE, MARION, AND SUMTER COUNTIES

September 8, 2025

The Hon. Thomas Barber
United States District Court
Middle District of Florida
207 NW 2nd Street
Ocala, FL 34475

In re: Robert Rivernider

Dear Judge Barber,

I understand you are the judge assigned to handle the probation violation case of Robert Rivernider. Less than two years ago, our office convicted Rivernider of voter fraud, when he unlawfully cast a ballot belonging to his deceased father in the 2020 election. He was adjudicated guilty of two felonies and one misdemeanor in connection with that crime. The lowest permissible sentence was 127 months in the Florida Department of Corrections. Notwithstanding this, and over the state's objection, the trial court determined that a downward departure was warranted – he was to serve no prison. The state has appealed that departure and it remains pending as of the time of this writing. Admittedly, I am not familiar with federal sentencing law. I am aware, however, that at the time of his voter fraud conviction, Rivernider had already been graced with an early release from his 144-month federal prison sentence.

As the chief prosecuting officer of the Fifth Judicial Circuit, it is my position that Rivernider has earned a lengthy prison sentence. His beliefs, ideology, and most importantly, his behavior, expressed repeatedly during his sentencing hearing, offend every notion of decency and respect for the law. It is axiomatic that someone who defies authority poses a danger those of us who choose to obey it. A person who disregards the rights of his victims, and most importantly, shows contempt for the government upon which he now seeks redress, is not deserving of any leniency.

Thank you for your attention to this matter. If there is any additional information that you need, please do not hesitate to ask.

Sincerely,

William M. Gladson

# EXHIBIT B

April 3, 2026 Emails from Court Reporter Rebekah Lockwood Regarding Transcript Availability

# Transcript(s) Estimate, USA v. Robert Rivernider, 5:24-CR-138

1 message

**Rebekah Lockwood** <r.lockwooduscr@gmail.com> Fri, Apr 3, 2026 at 8:43 AM
To: LK081662@gmail.com

Good morning, Ms. Keller.

I reported three hearings in Mr. Rivernider's case. They total to approximately 175 pages.

12/12/2025 Final Revocation before Judge Barber: 60 pages
10/24/2025 Revocation before Judge Barber: 100 pages
7/9/2025 Motion before Judge Barber: 15 pages

175 pages x $4.40 per page (30-day turnaround) = $770.00

Please prepare a check or money order made out to me and mail it to 801 North Florida Avenue, 2nd Floor, Tampa, Florida 33602.

As soon as I receive payment, I will begin transcribing the proceedings and will complete the transcript(s) in 30 days or less. I will email you a PDF of the transcript(s). If my page estimation is under, I will invoice you for the remaining balance. If my page estimation is over, I will issue a refund check for any overage.

Please let me know if you have any questions.

Thanks,

--
**Rebekah M. Lockwood, RDR, CRR**
Official Court Reporter to the
Honorable Thomas P. Barber
United States District Court
Middle District of Florida
(813) 301-5380
Sam M. Gibbons U.S. Courthouse
801 North Florida Avenue
2nd Floor
Tampa, Florida 33602

Gmail

# Transcript(s) Estimate, USA v. Robert Rivernider, 5:24-CR-138

1 message

**Loretta Keller** <lk081662@gmail.com> Fri, Apr 3, 2026 at 8:51 AM
To: Rebekah Lockwood <r.lockwooduscr@gmail.com>

Thank you for the prompt response, I will need to contact my brother to see how to pay for this. I had no idea the cost woukd be so high. He has had no income since his arrest in June. And I am not is a position to pay that for him. I will let you know what we can do. Again thank you so much.

[Quoted text hidden]

Gmail

# Transcript(s) Estimate, USA v. Robert Rivernider, 5:24-CR-138

1 message

**Rebekah Lockwood** <r.lockwooduscr@gmail.com> Fri, Apr 3, 2026 at 8:54 AM

To: Loretta Keller <lk081662@gmail.com>

You're welcome! The transcripts are available whenever he is ready to purchase.

[Quoted text hidden]

# EXHIBIT C

Eleventh Circuit Transcript Extension Order and Application for Extension of Time to File Transcript

U.S. COURT OF APPEALS RECEIVED CLERK JUN 08 2026 ATLANTA, GA

# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

## Application for Extension of Time to File Transcript and for Waiver of Fee Reduction

*(Please type or print. Application must be completed in full.)*

Short Case style: USA v. Robert Rivernider

USCA No: 25-14369 DC No.: 5:24-CR-138

Date extension requested to: 06/22/2026

Reasons for extension request: Heavy court calendar, trials, vacation

Date transcript order received: 04/22/2026

Date satisfactory arrangements for paying cost of transcript made: 04/22/2026

Pages in this appeal: 1) Transcribed 0 2) Not transcribed 275

For all other transcripts due, list:

| Docket No. | Date Ordered | Date Due | No. Pages Completed | No. Pages to be Completed |
|---|---|---|---|---|
| 8:23-CR-293 | 04/13/2026 | 5/13/2026 | 0 | 330 |
| 8:24-CR-22 | 04/28/2026 | 06/01/2026 | 0 | 85 |
| | | | | |

Estimated percentage of time in court during past 30 days: 80 Next 30 days: 80

Number of extensions requested in past 12 months: 5

If this extension is granted, do you agree to employ a substitute reporter to assist you in completing this transcript by the new due date? If not, please explain why: YES

*I certify by my signature that I have sent a copy of this request to the district judge who tried this case; to the Chief District Judge of this district; to the district court clerk; and to all counsel (or pro se parties) of record (11th Cir. R. 11-1).*

Court Reporter Signature: Rebekah Lockwood Date: 05/07/2026

Court Reporter Name (Print): Rebekah Lockwood Phone Number: (813)301-5380
r.lockwooduscr@gmail.com

---

Extension: GRANTED DENIED Fee Reduction: WAIVED NOT WAIVED

Transcript Due Date: 6-22-26

10% Discount Provision in effect on: ____

20% Discount Provision in effect on: ____

David J. Smith, Clerk of Court

By: /s/RVeals Date: 5-7-2026

PRESS FIRMLY TO SEAL

SUSTAINABLE FORESTRY INITIATIVE
Certified Sourcing
www.sfiprogram.org
SFI-00061

PAPER POUCH
how2recycle.info

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

UNITED STATES POSTAL SERVICE®

PRIORITY MAIL®

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destir
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at *http://pe.usps.com.*

** See International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

U.S. MARSHALS SERVICE
11th Circuit Court of Appeals (COA)
JUN 08 2026
CLEARED SECURITY

FLAT RATE ENVELOPE

ONE RATE ■ ANY WEIGHT

TRACKED ■ INSURED

PS00001000014

EP14F November 2025
OD: 12 1/2 x 9 1/2

To schedule free Package Picku
scan the QR code.

USPS.COM/PICKUP

UNITED STATES POSTAL SERVICE. Click-N-Ship®

P

usps.com
$11.12
US POSTAGE

9405 5301 0935 5386 9112 94 0111 2001 0003 0303

U.S. POSTAGE PAID
Click-N-Ship

06/01/2026
1 lb 0 oz

Mailed from 34785 464718745734938

PRIORITY MAIL®

ROBERT RIVERNIDER
14 S BOBWHITE RD
WILDWOOD FL 34785-9011

Created 2026-06-01
Flat Rate Envelope
RDC 03
C007

US APPEALS CT - 11TH CIRCUIT
CLERK OF THE COURT
56 FORSYTH ST NW
ATLANTA GA 30303-2218

USPS TRACKING #

9405 5301 0935 5386 9112 94

LEGAL MAIL
CASE NO. 25-14369

SKNA